UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| EDWARD PEDUTO,<br><br>        Plaintiff,<br><br>   v.<br><br>UTGR, INC.,<br><br>        Defendant. | Civil Action No. 24-11211-ADB |

## REPLY IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

### *Leave to file granted on July 24, 2024*

Plaintiff Edward Peduto's Opposition to the Motion to Dismiss filed by Defendant

UTGR, LLC f/k/a UTGR, Inc. ("UTGR" or "Defendant") attempts to handwave away the crucial

flaw of his Complaint:  that UTGR has no duty to prevent a third party from committing a

violent assault on its patron when the patron is nowhere on or even remotely near UTGR's

premises.  Peduto's second count of negligent infliction of emotional distress is merely a

reiteration of the negligence claim.  Consequently, this action should be dismissed in its entirety.

**1.  The Court Can, and Should, Determine That No Legal Duty Exists as a Matter
of Law**.

Ordinarily a person has no legal duty to control the conduct of a third party absent a special

relationship between either the third party or the victim of the conduct.  *Gushlaw v. Milner*, 42

A.3d 1245, 1257 (R.I. 2012).  A legal duty to prevent harm arising out of the intentional tortious

or criminal conduct of a third party may exist in limited circumstances based on a person's status

as a property owner, or a business that holds itself open to the public.  *Id.* (discussing possessors

of land); *Petersen v. Royal Ins. Co. of Am.*, No. PC04-6832, 2006 WL 1360941, at *5-6 (R.I.

Super. Ct. May 18, 2006) (applying concept to restaurant).  This theory of liability is based on

principles of premises liability, which recognizes that an owner or business has some degree of control over their property and those that they allow onto the property, and therefore it is reasonable in some circumstances to hold an owner liable for the conduct of third parties that occurs on the property. *See Gushlaw*, 42 A.23d at 1257 (discussing cases where liability for third-party conduct was found based on a special relationship that "emanated primarily from each defendant's status as a property owner," and quoting Restatement (Second) of Torts § 318); *Petersen*, 2006 WL 1360941, at *5-6 (applying principles of premises liability in context of business's duty to prevent third-party attack on patron).

In *Petersen*, for instance, the Court found it was "clear" that a restaurant's employees "had the ability to control" the assailant because they had control over the restaurant premises, had observed the assailant's aggressive behavior in the restaurant (including behavior directed specifically at the victim), and nevertheless permitted the assailant to leave the restaurant after hours through an exit leading to the adjoining mall, where he then attacked the victim. *Id.*, at *6. Other cases where a legal duty is recognized with respect to preventing harm from third-party conduct are similarly rooted in the crucial connection between the conduct and the defendant's control over the premises. "Most decisions in which proprietors have been held liable to their patrons for criminal acts of others are those in which the proprietor fails to provide reasonably needed security precautions *in or just outside the premises*, thus laying patrons or their property open to injury or loss." *Westerback v. Harold F. LeClair Co.*, 50 Mass. App. Ct. 144, 146 (2000) (emphasis added) (collecting cases where duty was found based on events occurring at or near the premises at issue).

As noted in the Amended Complaint, UTGR did have security cameras at the premises, but the security cameras captured nothing more than an image of several people peacefully walking

through its parking lot.  Peduto does not allege that anything threatening or concerning occurred on or near the premises.  In fact, the assault occurred nowhere near UTGR's premises.  The Court can, and should, apply the basic principles of negligence and premises liability and determine, as a matter of law, that UTGR owed no duty to prevent harm to Peduto as he traveled 50 miles away from the premises, where UTGR could not reasonably be expected to control the conduct of the third parties who violently assaulted Peduto.  *See Gushlaw*, 42 A.3d at 1254 n.14, 1258 (emphasizing element of control as critical to determination of special relationship giving rise to legal duty in premises liability context); *Petersen*, 2006 WL 1360941, at *5-6 (same); *Westerback*, 50 Mass. App. Ct. at 146 (existence of duty, including question of reasonable foreseeability, may be determined as a matter of law by trial judge).

Finally, as explained more fully in Defendant's Motion to Dismiss, even if the Court were to determine that a legal duty exists in relation to third-party conduct occurring miles away from UTGR's premises, the handful of other criminal activity at or near the premises alleged in the Amended Complaint is not extensive enough or similar enough to Peduto's assault to render it reasonably foreseeable such that a legal duty may be imposed.  None of the small number of alleged assaults, occurring over a roughly two-year and eight-month period, relate to a patron being tailed for many miles from the Casino.  Additionally, the other alleged incidents do not make Peduto's assault any more foreseeable, because the Amended Complaint fails to identify any activity occurring at the premises that UTGR would be able to observe in order to anticipate a possible future assault.

## 2. Peduto's Negligent Infliction of Emotional Distress Claim is Merely a Restatement of His Negligence Claim.

In his Opposition, Peduto argues that the "zone of danger" in which he allegedly found himself is the Casino, which allegedly had inadequate security at the premises, "[giving] rise to

the physical endangerment" of Peduto.  Opp'n at 5.  This argument is merely a restatement of Peduto's negligence claim, in which he attempts to stretch the causal chain leading to his assault beyond its logical and legal breaking point.  The term "zone of danger" in the context of a negligent infliction of emotional distress relates specifically to a person who suffers emotional distress due to being in the "zone of danger" of physical harm inflicted on a third person.  *See* Restatement (Second) of Torts § 313(2) (1965) & cmt. d (distinguishing between bystander scenario (mother witnessing child hit by car) and zone of danger scenario (mother within zone of danger of being hit by car herself)); *Migliori v. Airborne Freight Corp.*, 426 Mass. 629, 635 n.5 (1998) (noting Restatement (Second) of Torts adopted zone of danger rule in § 313(2)).  What Peduto is actually alleging is that the physical assault perpetrated by third parties caused him emotional, as well as physical harm.  This is an argument related to damages, not a separate cause of action.  *See* Restatement (Second) of Torts § 313 cmt. a (explaining emotional distress is relevant "in so far as its existence involves a risk of bodily harm, and as affecting the damages recoverable if bodily harm is sustained.").  As such, the negligent infliction of emotional distress claim should be dismissed for the same reasons as the negligence claim.

## **CONCLUSION**

This Court should grant Defendant's Motion to Dismiss Plaintiff's First Amended Complaint.

Defendant,
UTGR, LLC f/k/a UTGR, Inc.,


/s/ Armando E. Batastini
Armando E. Batastini (BBO No. 644098)
NIXON PEABODY LLP
One Citizens Plaza, Suite 500
Providence, RI  02903-1345
Tel:   (401) 454-1015
Fax:   (866) 680-8453
E-mail: abatastini@nixonpeabody.com

Dated: July 31, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of July, 2024, I filed and served this document electronically through the Court's CM/ECF system to:

Martin C. Winstead
marty@winsteadlaw.ino
WINSTEAD LAW
209 Broadway
Hanover, MA 02339


/s/ Armando E. Batastini